864 P.2d 596

**STATE of Idaho, Plaintiff–Respondent– Cross Appellant,**

v.

**Thomas D. RAUDEBAUGH, Defendant– Appellant–Cross Respondent.**

No. 19551.

Supreme Court of Idaho, Lewiston, May 1993 Term.

Sept. 8, 1993.

Rehearing Denied Dec. 29, 1993.

University of Idaho College of Law Legal Aid Clinic, Moscow, for appellant. Maureen Laflin, Supervising Atty.; Jonathan McCrone and Richard Hansen, legal interns, argued.

Larry EchoHawk, Atty. Gen.; Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent. Douglas A. Werth argued.

JOHNSON, Justice.

This is a criminal case in which the defendant was convicted of second-degree murder and use of a deadly weapon in the commission of the murder. In affirming the convictions, we hold:

1. The trial court properly instructed the jury that it could not consider a lesser included offense unless it first acquitted the defendant of each greater offense. We conclude this acquittal first requirement conforms with I.C. § 19–2132(c) and does not violate the United States Constitution.

2. The trial court did not abuse its discretion in allowing a witness for the state to testify concerning blood spatter evidence.

3. The trial court properly admitted a diagram of the crime scene for illustrative purposes.

4. The trial court did not violate I.R.E. 403 by allowing a witness to testify that the defendant was at the victim's residence to collect a drug debt.

5. The trial court's admission of testimony that the defendant's girlfriend supplied drugs to another person on a prior occasion did not violate I.R.E. 402.

6. The trial court improperly allowed a police officer to testify that he believed the defendant hid bloody clothing after the death of the victim. This testimony was not a permissible lay opinion under I.R.E. 702, because it lacked the personal knowledge required by I.R.E. 602. The

Court concludes, however, that allowing this testimony was harmless error.

7. The trial court improperly allowed a police officer to give an opinion concerning the truthfulness of one of the witnesses during interrogation on the night of the homicide, but that the error was harmless.

8. Comments by the prosecutor during closing argument did not constitute prosecutorial misconduct.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Thomas D. Raudebaugh and his girlfriend, Barbara Winkler, went to William David Gibbs's residence to collect a debt from Gibbs. Gibbs was not at home, but Kevin Aaseby, an acquaintance of Gibbs, told Raudebaugh that Gibbs would return later. Winkler and Raudebaugh returned to Gibbs's residence later that evening. Gibbs and Raudebaugh had an argument that started in the back bedroom where Gibbs and Raudebaugh were alone, but later moved to the living room where Winkler and Gibbs's roommate, Scott Gill, were present. Raudebaugh admits that he took an iron pipe away from Gibbs and struck Gibbs with it.

After Raudebaugh and Winkler left Gibbs's residence, Gill called for emergency help. When the authorities arrived, Gibbs was dead. The police found a knife underneath Gibbs's body and an autopsy revealed that Gibbs's died from a deep stab wound in the back of his neck.

When the police arrived, Gill and Aaseby were present. Gill and Aaseby initially told the police that they did not see any of the events leading to Gibbs's death. Later at the police station, Gill and Aaseby each changed their statements to indicate they had seen at least part of the altercation between Raudebaugh and Gibbs.

The state charged Raudebaugh with first-degree murder. At trial, Winkler and Gill each testified that they saw the portion of the fight that took place in the living room, but did not see Raudebaugh stab Gibbs with a knife. Aaseby testified that he was doing his laundry at Gibbs's residence and saw a portion of the fight from the doorway between the laundry area and the kitchen, but that he also did not see Raudebaugh stab Gibbs.

The state introduced blood spatter evidence through officer Greensides, the investigating officer, and Dr. Lindholm, a forensic pathologist. This evidence indicated that Gibbs was stabbed before he was beaten with the pipe. This evidence contradicted Raudebaugh and Winkler's testimony that Gibbs was not visually bleeding when they left the residence. There was also testimony at trial that Raudebaugh and Winkler were involved in illegal drug transactions. Over objection, Aaseby testified that when Raudebaugh first arrived at Gibbs's residence Raudebaugh told him that he was there to collect $75.00 which Gibbs owed for drugs. Gill testified that Winkler had sold him drugs on prior occasions.

The trial court instructed the jury that they must first acquit Raudebaugh of the greater offense of murder before they were allowed to consider the lesser included offense of voluntary manslaughter, and acquit Raudebaugh of voluntary manslaughter before considering the lesser included offense of involuntary manslaughter. The trial court instructed the jury that their failure to reach a unanimous decision would result in a mistrial. The jury found Raudebaugh guilty of second-degree murder and use of a deadly weapon in the commission of the crime.

Raudebaugh appealed.

## II.

### THE ACQUITTAL FIRST INSTRUCTIONS DO NOT VIOLATE I.C. § 19–2132(c).

Raudebaugh asserts that the requirement in the trial court's instructions and verdict form that the jury acquit Raudebaugh of each greater offense before considering the next lesser included offense

(the acquittal first instructions) violates I.C. § 19–2132(c). We disagree.

■ I.C. § 19–2132 addresses jury instructions concerning lesser included offenses. I.C. § 19–2132(c), which was added by amendment in 1988, states:

If a lesser included offense is submitted to the jury for consideration, the court shall instruct the jury that it may not consider the lesser included offense unless it has first considered each of the greater offenses within which it is included, and has concluded in its deliberations that the defendant is not guilty of each of such greater offenses.

Raudebaugh argues that the following jury instructions given by the trial court violate this statute:

#### Instruction 16C

If your unanimous verdict is that THOMAS DALE RAUDEBAUGH is not guilty of MURDER, you must next consider the included offense of VOLUNTARY MANSLAUGHTER.

#### Instruction 16F

If your unanimous verdict is that THOMAS DALE RAUDEBAUGH is not guilty of VOLUNTARY MANSLAUGHTER, you must next consider the included offense of INVOLUNTARY MANSLAUGHTER.

The verdict form submitted to the jury contained similar requirements that the jury reach a unanimous decision regarding each greater offense before proceeding to consider the next lesser included offense.

This Court recently addressed an acquittal first instruction in *State v. Townsend,* 92.261 SCR 1508 (Issued Dec. 3, 1992) Opinion withdrawn and superseded on Rehearing by *State v. Townsend,* 124 Idaho 881, 865 P.2d 972 (1993). In *Townsend,* the Court held that an acquittal first instruction complied with I.C. § 19–2132(c). But for the fact that *Townsend* is not final, because of the pending rehearing, *Town-*

*send* would resolve the identical issue raised by Raudebaugh in this case.

Raudebaugh's attempt to characterize *Townsend's* holding as dicta is unpersuasive. Although the Court remanded *Townsend* on grounds unassociated with the acquittal first instruction, I.C. § 1–205 directs the Court, when remanding for a new trial, to determine all issues presented on appeal and necessary to the final determination of the case. As *Townsend* now reads, Townsend will receive a new trial on the charge of aggravated battery. There are lesser included offenses of this charge, and the Court was correct in resolving the acquittal first instruction issue presented in *Townsend.* Whether *Townsend* will remain in its current form, however, depends on the outcome of the rehearing. Therefore, we address the issue without relying on *Townsend.*

Raudebaugh urges that a reading of I.C. § 19–2132(c) upholding acquittal first instructions conflicts with this Court's prior holdings in *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299, *cert. denied,* 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 *and* 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989), *overruled on other grounds by, State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991); and *State v. Enno,* 119 Idaho 392, 807 P.2d 610 (1991). A close reading of these cases, however, shows that neither *Charboneau* nor *Enno* addressed this issue. The events that led to the conviction in *Charboneau* preceded the enactment of I.C. § 19–2132(c), and consequently, *Charboneau* is not authority for the interpretation of the statute's directives. *See* I.C. § 73–101 ("No part of these compiled laws is retroactive, unless expressly so declared."); *State v. Lindquist,* 99 Idaho 766, 768, 589 P.2d 101, 103 (1979). Although the events that led to the conviction in *Enno* occurred after I.C. § 19–2132(c) became effective, *Enno* does not address the validity of an acquittal first instruction. In *Enno,* the Court found that the jury instruction raised on appeal was not an acquittal first instruction. 119 Idaho at 401, 807 P.2d at 619.

■ Raudebaugh argues that we should consider the legislative history of I.C. § 19–2132(c) to aid in its construction. We

apply the rules of construction to a statute, however, only when the statute is ambiguous. Otherwise, we interpret the statute in accordance with its language. *State v. Wiedmeier*, 121 Idaho 189, 824 P.2d 120 (1992). As we read I.C. § 19–2132(c), the statute is unambiguous, and we interpret it according to its language.

The statute requires the trial court to instruct the jury that it may not consider the lesser included offense unless it "has concluded in its deliberations that the defendant is not guilty of each of [the greater offenses within which it is included]." This language clearly requires an affirmative conclusion of the jury that the defendant is not guilty of each greater offense before considering a lesser included offense. The jury may reach this conclusion only by unanimity. Otherwise, the conclusion would be a conclusion of some of the jurors, but not of "the jury." Therefore, the acquittal first instructions comply with the language of the statute.

### III.

### AN ACQUITTAL FIRST REQUIREMENT DOES NOT VIOLATE THE UNITED STATES CONSTITUTION.

Raudebaugh asserts an acquittal first requirement, such as we have ruled is contained in I.C. § 19–2132(c), violates the Due Process Clause of the United States Constitution, because it undermines the reasonable doubt standard of proof for a conviction. We disagree.

■ Preliminarily, we reject the state's contention that Raudebaugh's failure to raise the constitutionality of I.C. § 19–2132(c) in the trial court precludes Raudebaugh from pursuing the issue on appeal. An appellant may challenge a jury instruction given by the trial court even if no objection to the instruction was made at trial. *State v. Smith*, 117 Idaho 225, 786 P.2d 1127 (1990).

We reject the state's contention that *State v. Fodge*, 121 Idaho 192, 824 P.2d 123 (1992), precludes appellate review of this issue. The jury instruction issue in *Fodge*

concerned the trial court's *refusal* to give a requested jury instruction, not the giving of an instruction. When an appellant challenges an instruction given by the trial court, *Smith*, and not *Fodge*, applies. An appellant challenging an instruction on appeal may assert a constitutional basis for the challenge, even though the constitutional question was not raised in the trial court. In *Smith*, the Court held "that the failure to object to an instruction at trial in a criminal case does not constitute a waiver of *any* objection to the instruction on appeal." 117 Idaho at 229, 786 P.2d at 1131 (emphasis added).

■ Raudebaugh contends that an acquittal first requirement violates due process, because it undermines the reasonable doubt standard and makes a coerced verdict more likely. Raudebaugh cites *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), as the leading authority to support his position. In *Beck*, the Supreme Court held that a state statute precluding trial courts from giving lesser included offense instructions when the defendant was charged with a capital crime violated the Due Process Clause of the United States Constitution. The Supreme Court found that the statute was unconstitutional because it forced the jury to choose between convicting the defendant of a capital offense and acquitting the defendant of the charge completely. The Supreme Court reasoned that this created an impermissible possibility that a jury might choose to convict a defendant for the capital crime because they believed that the defendant was guilty of some crime and did not want to acquit the defendant wholly. *Id.* at 637, 100 S.Ct. at 2389, 65 L.Ed.2d at 402.

Raudebaugh argues that the effect of an acquittal first instruction is the same as if no lesser included offense instruction had been given. This extends *Beck* beyond its meaning. The acquittal first requirement of I.C. § 19–2132(c) does not lead to an unconstitutional probability of an unwarranted conviction as was present in *Beck*, because the requirement does not present the jury with the drastic choice between

acquittal and capital murder that was forced upon the jury in *Beck*.

I.C. § 19–2132(b) provides that the trial court shall instruct the jury with respect to a lesser included offense, if requested to do so, and if a reasonable view of the evidence would support a finding that the defendant committed the lesser included offense but did not commit the greater offense. The acquittal first requirement guides the jury as to the order and method of considering the lesser included offenses and does not impermissibly increase the likelihood that the jury will reach an unwarranted verdict. The jury has the opportunity to convict of a lesser included offense, if it first acquits the defendant of each greater offense. We do not see in this formulation any coercion that would cause a jury to convict of a greater offense, if it was not unanimous in a guilty verdict.

We do not consider the constitutionality of the jury instructions under the Idaho Constitution. Raudebaugh did not raise, cite, or argue this issue in his initial brief to this Court. I.A.R. 35(a)(4) requires an appellant to list the issues on appeal in the issues on appeal portion of the brief. The issue stated in Raudebaugh's opening brief was: "Whether a requirement of unanimous acquittal on higher offenses before allowing jury consideration of lesser included offenses is unconstitutional?" Raudebaugh made no reference in the brief to the Idaho Constitution and cited only cases dealing with the United States Constitution.

This Court has held that it will not consider an issue if it was not raised as an issue on appeal. The Court has relaxed this requirement where the issue was either addressed by authorities cited or arguments contained in the briefs. *State v. Prestwich*, 116 Idaho 959, 961, 783 P.2d 298, 300 (1989). In this appeal, however, Raudebaugh did not refer to the state constitution until his reply brief. Raising the issue at this late stage of the briefing does not allow for full consideration of the issue, and we will not address it.

## IV.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING A WITNESS FOR THE STATE TO GIVE EXPERT TESTIMONY REGARDING BLOOD SPATTER EVIDENCE.

Raudebaugh asserts that the trial court abused its discretion by allowing officer Greensides and Dr. Lindholm to testify as experts regarding blood spatter evidence. We disagree.

We limit our review to the trial court's ruling allowing Lindholm to testify and do not address the propriety of Greensides's testimony, because this issue was not preserved for appeal. The record reveals that Raudebaugh objected to the foundation for Greensides's testimony concerning the blood spatters. The state then elicited additional information regarding Greensides's training in interpreting blood spatters, and Greensides testified without further objection. By not objecting after the state laid additional foundation, Raudebaugh failed to preserve this issue for appeal.

Raudebaugh also objected to Lindholm's qualifications to interpret and analyze blood spatter evidence. After the objection, the state laid additional foundation regarding Lindholm's training and qualifications, and Raudebaugh objected again. The trial court overruled the objection and allowed Lindholm's testimony.

In *State v. Rodgers*, 119 Idaho 1047, 812 P.2d 1208 (1991), this Court accepted testimony concerning blood spatter evidence as an appropriate field of testimony for expert witnesses under I.R.E. 702. The trial court's determination that a witness qualifies as an "expert" is discretionary, and this Court will review the record to determine if there was an abuse of this discretion. *Id.* at 1051, 812 P.2d at 1212.

In this case, Lindholm testified that he had taken a one-week course in blood spatter patterns taught by a professional instructor, that he received training in crime scene evaluation in his training as a forensic pathologist, that he had interpret-

ed blood spatter patterns and investigated crime scenes on a number of occasions, and that he had given testimony on blood spatter patterns in other cases.

I.R.E. 702 provides:

**Rule 702. Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This Court has held that a witness's expertise may be based on actual field experience in the particular area. *State v. Garrett*, 119 Idaho 878, 811 P.2d 488 (1991) (Bistline, J., Bakes, C.J., and Boyle, J., concurring on adequacy of foundation for expert testimony).

Given Lindholm's testimony about his qualifications to give expert testimony concerning blood spatters, the trial court did not abuse its discretion in allowing Lindholm to testify as an expert under I.R.E. 702.

## V.

### THE TRIAL COURT PROPERLY ADMITTED THE DIAGRAM OF GIBBS'S LIVING ROOM.

Raudebaugh asserts that the trial court improperly admitted into evidence a diagram of Gibbs's living room which contained sight lines depicting where Aaseby might have been standing to view the events to which he testified. We disagree.

The diagram was offered through the testimony of Greensides, an investigating police officer. Raudebaugh objected to the diagram as irrelevant because the sight lines were not consistent with Aaseby's testimony concerning where he was standing when he saw Raudebaugh and Gibbs fighting in Gibbs's living room. The trial court found that the sight lines were consistent with Greensides's testimony and admitted the diagram for illustrative purposes. On cross-examination, Greensides testified that the diagram was not to scale and that the sight lines did not reflect where Aaseby testified he was standing.

I.R.E. 402 states: "All relevant evidence is admissible ... Evidence which is not relevant is not admissible." This rule makes it clear that the relevancy of evidence is not a discretionary matter. There is no issue of credibility or finding of fact that must be resolved in order for the trial court to reach a decision on relevancy. Therefore, this Court will review the question of relevancy de novo.

In this case, the diagram was admitted for illustrative purposes only and served as a visual aid to illustrate Greensides's testimony. In this guise, it is only necessary that the diagram be relevant to Greensides's testimony. Greensides testified at trial that he had stood in the kitchen where Aaseby told him he was standing and that he could not see the area of the living room which Aaseby claimed to have seen the night of Gibbs's murder. Greensides used the diagram to aid his testimony concerning his investigation of the crime scene and where he was standing when he could see the part of the living room Aaseby claimed to have seen the night of Gibbs's murder. We agree with the trial court that the diagram is relevant to illustrate Greensides's testimony.

## VI.

### THE TRIAL COURT PROPERLY ADMITTED TESTIMONY THAT RAUDEBAUGH CAME TO COLLECT A DRUG DEBT.

Raudebaugh raises two complaints regarding admission of testimony from Aaseby that Raudebaugh told him on the night of Gibbs's murder that Raudebaugh was there to collect a drug debt. Raudebaugh first asserts that the state violated I.C.R. 16(b)(6) by not disclosing Aaseby's statement to the defense until the trial had begun. Raudebaugh also asserts that the trial court abused its discretion under I.R.E. 403 by not excluding this evidence as overly prejudicial. We disagree with both of Raudebaugh's assertions.

In ruling on Raudebaugh's motion in limine before trial, the trial court stated that testimony establishing that Raudebaugh was attempting to collect a drug debt from Gibbs would be admissible under I.R.E. 404(b) to prove motive. Raudebaugh does not challenge this ruling on appeal. At trial, the state sought a ruling on the admissibility of testimony from Aaseby that Raudebaugh told him when he arrived at Gibbs's residence that he was there to collect money from Gibbs for some "crank he had fronted him." The state presented this evidence in an offer of proof. On cross-examination during the offer of proof, Aaseby testified that he told police officer Moser about Raudebaugh's statement while Aaseby was at the police station on the night of Gibbs's homicide. Raudebaugh objected to admission of Aaseby's testimony arguing that Aaseby's statement to Moser was not properly disclosed to the defense as required under I.C.R. 16(b)(6).

I.C.R. 16(b)(6) requires the prosecution to disclose to the defense any statements by prospective prosecution witnesses to officials involved in the investigatory process. The prosecutor argued that the state did not violate I.C.R. 16(b)(6), because Aaseby first informed the state about Raudebaugh's statement on the evening before the prosecutor made the offer of proof and that the prosecutor informed the defense of Aaseby's statement the following morning. Moser testified in the offer of proof that he interviewed Aaseby a number of times on the night of the homicide, that he asked him about the nature of the debt, and that he did not recall Aaseby saying that he knew Raudebaugh was there to collect money for drugs. The trial court found that the state did not know about Aaseby's statement until the evening prior to its disclosure to Raudebaugh. The trial court then concluded that the state did not violate I.C.R. 16(b)(6) by disclosing the statement to Raudebaugh the following morning.

The trial court's finding that the state did not learn about Aaseby's testimony until the evening before its disclosure is a finding of fact which will not be overturned

by this Court if it is supported by substantial and competent evidence. *State v. Tierney*, 109 Idaho 474, 476, 708 P.2d 879, 881 (1985). The record in this case supports the trial court's finding. Moser's testimony supports a finding that the police were not informed of Aaseby's statement on the night of the homicide. Aaseby testified that he did not discuss the subject with the prosecuting attorney until the evening before the offer of proof.

■ We also conclude that Raudebaugh did not demonstrate that the lateness of the discovery deprived him of a fair trial. The state disclosed the evidence to the defense the morning after being told by Aaseby. We will not overturn the trial court's ruling, absent a showing by Raudebaugh that the lateness of the discovery so prejudiced Raudebaugh's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed right to a fair trial. *See State v. Pizzuto*, 119 Idaho 742, 751, 810 P.2d 680, 689 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495.

■ Raudebaugh also claims that the trial court abused its discretion under I.R.E. 403 by allowing Aaseby to testify that the debt was drug related. Raudebaugh objected to the testimony during the offer of proof arguing that the probative value of the evidence was outweighed by its prejudicial nature.

■ I.R.E. 403 allows the trial court to exclude relevant information where the probative value of the evidence is substantially outweighed by its prejudicial nature. I.R.E. 403 requires the trial court to balance the probative and the prejudicial nature of the evidence presented and to determine whether to admit the evidence. *State v. Rhoades*, 119 Idaho 594, 603, 809 P.2d 455, 464 (1991) (citing *Davidson v. Beco Corp.*, 114 Idaho 107, 110, 753 P.2d 1253, 1256 (1987)). The decision whether to admit the evidence is a matter of discretion for the trial court. *Id.*

The record reveals that the trial court balanced the prejudicial and the probative value of the evidence. Although the trial

court found the evidence to be both probative and prejudicial, the trial court ruled that the prejudicial nature of the evidence did not substantially outweigh its probative value. The trial court noted that the evidence was probative of motive and although motive was not a specific element of the crime involved, the evidence went to a factor which the jury could consider in making sense out of the evidence presented at trial. Reviewing the trial court's ruling pursuant to the three-step abuse of discretion standard set forth in *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989), we conclude the trial court did not abuse its discretion under I.R.E. 403 in admitting the evidence.

## VII.

### GILL'S TESTIMONY THAT WINKLER SUPPLIED HIM A DRUG IS RELEVANT.

Raudebaugh asserts that the trial court admitted irrelevant evidence by allowing Gill to testify that Winkler, Raudebaugh's girlfriend, supplied Gill with an illegal drug on a prior occasion. We disagree.

The prosecutor questioned Gill about his and Gibbs's use of "crank" on the night of the murder. The prosecutor asked Gill if he ever received crank from Winkler. Raudebaugh objected to this question based on relevance. The trial court overruled the objection. Gill testified that he had received crank from Winkler. The prosecutor then asked Gill when Winkler gave him crank prior to the night of Gibbs's homicide. Raudebaugh renewed the relevance objection, and the trial court sustained the objection. Thus, the issue before us is whether Gill's testimony that he had received crank from Winkler, without any specification as to when, is relevant.

As we have discussed above, I.R.E. 402 mandates exclusion of irrelevant testimony, and the determination of relevancy is a ruling which is not a matter of discretion for the trial court. We review the question of relevancy de novo.

In order to be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401.

■ In this case, the state sought to show that Raudebaugh killed Gibbs because Gibbs would not pay a drug debt. Winkler's testimony as a witness for the state preceded Gill's testimony. Winkler testified that on the day of the homicide, Gibbs called her twice and told her to come by and that he would have some money for her. The clear implication of this testimony is that the drug debt was owed by Gibbs to Winkler. In this context, Gill's testimony that Winkler, who lived with Raudebaugh, supplied Gibbs's roommate with illegal drugs before the homicide tends to make the fact that Gibbs owed a debt for illegal drugs more probable. This is sufficient to establish the relevance of Gills testimony.

## VIII.

### ADMISSION OF A POLICE OFFICER'S OPINION THAT RAUDEBAUGH CONCEALED BLOODY CLOTHING VIOLATED I.R.E. 701, BUT WAS HARMLESS ERROR.

Raudebaugh asserts that admission of officer Staver's opinion that Raudebaugh actively concealed bloody clothing was an impermissible opinion which violated I.R.E. 701. We agree, but conclude this was harmless error.

■ At trial, officer Staver testified that he received from Winkler the clothing Winkler represented Raudebaugh was wearing on the night of Gibbs's homicide. This clothing did not have any bloodstains on it. Aaseby and Gill each testified that the clothing Raudebaugh was wearing clothing on the night of the homicide was different from the clothing Raudebaugh testified he was wearing. Staver testified that he searched the neighborhood around Raudebaugh's residence to see if he could find discarded clothing, but was unsuccessful. On cross-examination, Raudebaugh's

attorney questioned Staver regarding the extensive nature of his search and the fact that Staver did not find any other clothing. On redirect examination, the prosecutor asked Staver whether he reached any conclusions "about what happened to the bloody clothes." Raudebaugh objected to any answer other than yes or no and the trial court sustained the objection. Staver answered "yes." The state then asked Staver to give his conclusion. Raudebaugh objected based on "speculation, competence, and foundation." The trial court overruled the objection and Staver testified that he believed the clothes were put somewhere where the police could not find them.

I.R.E. 701 governs the testimony of lay witnesses and states testimony in the form of opinions or inferences is limited to those opinions or inferences which are: "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue." Pursuant to I.R.E. 701(a) a lay opinion must be based on the witness's personal knowledge of events or facts in order to be admissible. The personal knowledge required to give a lay opinion is the same personal knowledge of events as required by I.R.E. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that [the witness] has personal knowledge of the matter.").

Staver did not meet this personal knowledge requirement. Staver had no personal knowledge that the clothing existed, that the clothing was "bloody," or that Raudebaugh had actively concealed the clothing from the police. Without this personal knowledge, admission of Staver's opinion violated I.R.E. 701.

Although we have concluded that the trial court should not have allowed Staver's opinion concerning the bloody clothing, we also conclude that this was harmless error. In our view of the evidence as a whole, there is not a reasonable possibility that this opinion might have contributed to Raudebaugh's convictions, and we declare a belief that the admission of this opinion was harmless beyond a reasonable doubt.

*State v. Pizzuto*, 119 Idaho 742, 762, 810 P.2d 680, 700 (1991).

## IX.

## THE TRIAL COURT SHOULD NOT HAVE ADMITTED TESTIMONY CONCERNING THE TRUTHFULNESS OF GILL'S INITIAL STATEMENT TO THE POLICE, BUT THE ERROR WAS HARMLESS.

Raudebaugh asserts that officer Moser, who questioned Aaseby and Gill the night of the murder, gave impermissible testimony regarding Aaseby's and Gill's truthfulness. Concerning the testimony regarding Aaseby, we disagree. Concerning the testimony regarding Gill, we agree, but conclude that the error was harmless.

Gill and Aaseby were questioned by the police a number of times on the night of Gibbs's murder. Initially at the residence, Gill and Aaseby each told the police that they did not know anything about Gibbs's murder and were not present when it happened. Later that night, Gill and Aaseby each recanted their initial statement and told the police that they were present at Gibbs's residence and saw at least part of the altercation between Gibbs and Raudebaugh.

At trial, Moser testified as an expert regarding the interpretation of body language during a police interrogation. Regarding Gill's body language during the initial interview at the residence Moser stated:

[MOSER]: I felt that when I was talking to Mr. Gill at the scene that he was not telling the truth, that his reaction to what he had just—

MR. JONES: Your Honor, I do object to the—I move to strike any reading of the truth or non-truth as to competence and foundation.

THE COURT: Overruled. It's merely his opinion.

[MOSER]: I felt Mr. Gill was not telling the truth, that he was hiding something.

Moser also testified regarding Aaseby's demeanor while giving his initial statement.

Moser later testified, without objection, that Aaseby seemed "relieved" when he later changed his statement and that Aaseby voiced his desire to tell the truth. On cross-examination, Raudebaugh asked Moser if he knew why Aaseby later changed his story. Moser answered, "I believe it was because Scotty Gill told me the truth." In response to a question on redirect examination, Moser answered: "I had a feeling he was telling me the truth." Raudebaugh objected to this answer and the trial court struck the answer from the record.

■ The record indicates that Moser testified as to the truthfulness of Gill's initial statement to the police and that Raudebaugh made a proper objection to this testimony. We address the admissibility of this statement only. We do not address the propriety of Moser's testimony regarding the truthfulness of Aaseby's testimony or Moser's testimony on cross-examination, because no objection was made to this testimony at trial. We also do not address Moser's testimony on redirect examination. The trial court struck this testimony and Raudebaugh did not object at trial to the adequacy of this remedy.

We note that the issue raised by Raudebaugh on appeal addresses the relation between Moser's testimony and the credibility of key witnesses for the state. Raudebaugh has not raised the issue of Moser's qualifications to testify as an expert in this area, and we do not address this issue.

I.R.E. 608(a) provides:

**Rule 608. Evidence of character and conduct of witness.**—(a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Pursuant to this rule, testimony by one witness that another witness was, or was not, telling the truth when they made a particular statement is not admissible evidence. Whether a witness was being truthful at the time the witness made a statement is for the jury, not another witness, to determine. Moser did not give an opinion as to Gill's general character for truthfulness, but testified that, based on his observation of Gill's body language during police interviews, he believed Gill was not telling the truth when he made certain statements. Because Moser gave his opinion regarding the truthfulness of certain statements made by Gill, another witness, Moser's opinion testimony was inadmissible.

The fact that Moser was supposedly an expert qualified to evaluate the credibility of statements made by witnesses during police interrogations does not make this opinion testimony admissible. A qualified expert witness may render an opinion on an issue only when the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to determine the issue. *State v. Hester*, 114 Idaho 688, 692–93, 760 P.2d 27, 31–32 (1988).

> Where an expert in a given field is not better equipped than a lay person to make [a] particular inference *or if neither an expert nor a lay person is allowed to make that inference* then the trier of fact is not 'assisted' by hearing the expert's opinion and such testimony is inadmissible.

*Hester*, 114 Idaho at 695, 760 P.2d at 34 (quoting *Matter of Cheryl H.*, 153 Cal. App.3d 1098, 200 Cal.Rptr. 789 (1984) (emphasis added)). "[A]n expert's opinion ... is admissible up to the point where an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. To venture beyond that point, however, is to usurp the jury's function." *Hester*, 114 Idaho at 695–96, 760 P.2d at 34–35 (citing *State v. Jackson*, 239 Kan. 463, 721 P.2d 232 (1986)). Here, Moser's opinion testimony evaluated the credibility of Gill's out of court statements based on his interpretation of Gill's body language. This testimony improperly usurped the jury's function,

and it was error for the district court to admit it. We conclude, however, that this error was harmless beyond a reasonable doubt, because there is no reasonable possibility that this portion of Moser's testimony might have contributed to Raudebaugh's conviction, and because it is harmless, this error should not serve as a basis for reversal. *Pizzuto*, 119 Idaho at 762, 810 P.2d at 700.

## X.

### THE PROSECUTOR'S CLOSING ARGUMENT DOES NOT CONSTITUTE PROSECUTORIAL MISCONDUCT.

Raudebaugh asserts that two statements by the prosecutor during closing arguments constitute prosecutorial misconduct of such a severe nature as to require a new trial. We disagree that the statements constitute prosecutorial misconduct.

 As an initial issue the state claims that Raudebaugh can not raise this issue on appeal because he did not object to the prosecutor's closing argument at trial. In *Pizzuto*, the Court held that improper statements during closing can constitute fundamental error. *Id.* at 752, 810 P.2d at 690. If there were fundamental error, we would address the issue on appeal even though no objection was made at trial. In order to determine whether we will consider this issue on appeal, we first must assess whether the error would be fundamental if there were error. *State v. Kenner*, 121 Idaho 594, 597, 826 P.2d 1306 (1992).

Raudebaugh challenges the following statement by the prosecutor:

> Folks, in order for you to accept the defendant's version as to what happened, you have to conclude that when the defendant left that—believe his testimony that David was not bleeding, there was no blood and that David was okay. You would have to totally believe that testimony and reject all of the State's evidence, and you would have to totally believe his testimony that there was not a speck of blood which he saw.

Raudebaugh claims that this statement distorted the reasonable doubt burden of proof by indicating that the jury could not acquit Raudebaugh unless they believed every part of Raudebaugh's testimony. If this were true, the error would be fundamental, because it would go to the foundation of the case and would take from Raudebaugh a right which is essential to his defense. *Kenner*, 121 Idaho at 597, 826 P.2d at 1309 (quoting from *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989)). Therefore, we will address the issue.

Raudebaugh's argument does not bear scrutiny in light of the actual language used by the prosecutor. The prosecutor's statement was a comment on the credibility of Raudebaugh's testimony in light of evidence produced by the state at trial. The prosecutor did not say that the jury had to believe Raudebaugh in order to acquit him. The prosecutor merely pointed out Raudebaugh's testimony and highlighted the conflict between this testimony and the evidence produced by the state at trial.

 Raudebaugh also challenges the following statements by the prosecutor regarding the manner in which Gibbs died:

> As he lay motionless, this defendant beat, and beat, and beat him, and beat the last ounces of life out of the victim as he lay there motionless.
>
> . . . .
>
> If you close your eyes you could almost hear the sickening thud of the pipe hitting a human body. And as Scott Gill testified you could almost hear the shrieks, and hysterical screams of Barbara Winkler.

Raudebaugh claims these statements conflict with the evidence produced at trial that Gibbs died as the result of a stab wound to the neck and was not killed as the result of being hit with the pipe and was intended to inflame the passions of the jurors. Although in *State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980), the Court ruled that a prosecutor has a duty to avoid mischaracterizing evidence and using inflammatory tactics in closing argument, we

**770**

do not consider any error in allowing this argument by the prosecutor to be fundamental. Therefore, we do not address whether there was error.

## XI.

## WE DO NOT ADDRESS CUMULATIVE ERROR.

Raudebaugh asserts that cumulative errors at trial require a reversal of his conviction. We do not address this issue because this Court finds that the trial court committed two errors, and these errors were harmless.

## XII.

## CONCLUSION.

We affirm the convictions.

McDEVITT, C.J., and TROUT and SILAK, JJ., concur.

BISTLINE, Justice, concurring in part, dissenting in part.

It is readily agreed that the "acquittal first" instruction did not violate I.C. § 19–2132(c) or the United States Constitution and further agreed that there is no occasion today to address the propriety of the instruction under the Idaho constitution. *Compare, State v. Pratt (Joseph),* —— Idaho ——, —— P.2d ——, 93.15 ISCR 838–43 (1993) (Bistline, J., concurring, specially concurring, and dissenting). Notwithstanding those points of agreement with the majority opinion, my conclusion is that the conviction should be reversed because of the numerous evidentiary errors at trial.

First, the evidence regarding Raudebaugh coming to collect a *drug* debt was wholly irrelevant. While the fact that Gibbs owed Winkler (Raudebaugh's girlfriend) some money and that Raudebaugh had come to the house to collect the owed money only tends to show his motivation for being there, rather than motive for the crime; the fact that the money was owed for *illegal drugs* had nothing whatever to do with motive. Thus, that portion of testimony was simply inadmissible under I.R.E. 402.[1] To make matters worse, the admission of this irrelevant evidence, presumably purposely done, interjected serious and utterly unjustifiable information, all to the prejudice of Raudebaugh. The correct course would have been to allow the testimony as to the debt, even as to its amount, but without revealing the nature thereof. In that way, the State would have received all the permissible benefits of evidence which it wanted to lay before the jury and the prejudice to the defendant would have been avoided. But, be that as it may, the prosecution would be hard-put to convince competent practicing members of the bar that bringing *drugs* into the fore, as was here done, was not an impermissible invasion of, and a destruction of, defendant's right to a fair trial even though the prosecuting counsel who represented the State have established that they are all well versed, capable and experienced advocates. Although one would prefer to believe that the interjection of the word "drugs" in connection with the collecting of an owed debt was unintentional, the State over a now considerable passage of time, has not been heard to so explain.

Likewise, Gill's testimony about Winkler selling Gill illegal drugs on credit is only relevant to the extent that it establishes that Gill owed Winkler some money. Again, the fact that the money was owed for drugs does not establish motive and is logically irrelevant.

This irrelevant evidence served no purpose other than to unfairly prejudice the defendant. As the defense attorney put it:

I question whether the State would be fighting very hard to establish the nature of the debt if they believed it was over furniture which had been sold and not paid for, or whether it was a simple

---

1. The second sentence of Rule 402 clearly states: "Evidence which is not relevant is not admissible." Moreover, Rule 403 presents the clearly worded caveat that: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

loan of money.... The reason the State is fighting so hard is because this is extremely prejudicial evidence, and they want this prejudicial evidence in front of the jury.

It is beyond peradventure that defense counsel is absolutely right. The prosecution wanted to establish that there was a drug debt in order to show that the defendant was associated with illegal activities and thus more likely to have committed the charged crime. To that extent any probative value of the evidence is substantially outweighed by its prejudicial effect. Moreover, this type of propensity evidence is expressly forbidden by I.R.E. 404(a). Seeing a need that the Court take appropriate action to preclude this all too common prosecutorial smear tactic, it follows that the time is *now* for the Court to take a firm stand and direct that the defendant be provided with a new trial which hopefully will be far less tainted with prejudicial error.

Moreover, the above were not the only evidentiary errors at trial. The majority admits that Moser's testimony, as to the truthfulness of Aaseby and Gill, was also inadmissible. 124 Idaho at 767–769, 864 P.2d at 605–607. As is additionally noted in our majority opinion, Officer Staver's testimony that Raudebaugh concealed some bloody clothing is obviously inadmissible under I.R.E. 701. 124 Idaho at 766–767, 864 P.2d at 604–605.

It is readily concluded that the cumulative effect of these errors deprived the defendant of a fair trial. Accordingly, the conviction and sentence should be reversed and the cause remanded for a new trial.