IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47764

| STATE OF IDAHO, | ) | |
| | ) | Filed: August 17, 2021 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| ROD LEE FULTON, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael Reardon, District Judge.

Judgment of conviction for rape and for attempted strangulation, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant. Ben P. McGreevy argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

BRAILSFORD, Judge

Rod Lee Fulton appeals from his judgment of conviction for rape, Idaho Code § 18-6101, and for attempted strangulation, I.C. § 18-923, entered after a jury trial. Fulton asserts the district court erred by admitting propensity evidence in violation of Idaho Rule of Evidence 404(b). We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Fulton and his wife, L.F., were married in 2010. At that time, Fulton had a four-year-old daughter whom L.F. treated as her own. After L.F. and Fulton married, they had a son together. During the marriage, L.F. worked full-time, paid the bills, and took care of the house and the children. Meanwhile, Fulton worked on and off as an electrician but was unemployed from October 2017 through April 2018. L.F. testified that the couple fought about money, about

1

L.F.'s housekeeping and child care, and about divorcing. In late March 2018, Fulton kicked L.F. out of the master bedroom. She slept on the couch and eventually moved into their daughter's bedroom.

On April 2, L.F. got the children off to school and went to work. L.F. was bothered, however, by two posts Fulton had made on his social media account. One was a photograph of Fulton holding a loaded revolver in their house, and the other was a solicitation for someone to perform a sexual act on him, which began by stating, "So hey, who wants to f--k?" and contained other derogatory language. Unable to concentrate at work, L.F. left early and returned home to discuss the posts with Fulton while the children were still at school.

During a conversation about the posts, Fulton became very angry and told L.F. to take off her pants "because he want[ed] to f--k." L.F. did as Fulton told her and testified that she did not say "no" "[b]ecause it makes things worse," meaning "he would become violent and hit [her]." Fulton then put L.F. face down on the bed, put his approximately 340-pound body on top of hers so she could not move, put his hands around her neck, and applied pressure such that "it was hard to breathe." He forcibly penetrated her anally and vaginally with his penis while she cried.

When Fulton lost his erection, "he pushed [L.F.'s] head down on his penis," and she "gave him oral and a hand job." Then, Fulton turned her over on her stomach, and she curled into a fetal position and put her hands around her neck. At that point, Fulton said, "If you want to play dead, I can do that." He then "pulled the knife out of the wall [which] was above the headboard and held it against [her] neck area and cheek area," moved it across her throat, and penetrated her again while holding the knife against her throat. After Fulton ejaculated, he let L.F. off the bed.

Sometime later that afternoon, Fulton had L.F.'s cell phone, was unable to unlock it, and became angry again. He pinned her against the wall, held his hand against her throat, and applied pressure. L.F. testified that it "hurt a lot" and was "really painful" and that she believed she lost consciousness. Fulton stopped when their daughter returned home from school and the front door shut loudly. Afterwards, L.F. testified that she felt "light headed," "couldn't breathe," "couldn't really see that well," and realized she had urinated in her pants.

Eventually, L.F. left the house to pick up their son at daycare. She then picked up their daughter at a different location and called 911 from a restaurant down the street from the house. An ambulance arrived, and the paramedics recommended that L.F. go to the hospital. The police

also arrived, spoke to L.F., went to the house, and arrested Fulton after speaking with him. The next day, L.F. saw a registered nurse specializing in forensic examinations of "sexual assault and domestic violence patients." L.F. also later saw a surgeon who had recently performed surgery on L.F.'s neck prior to the April 2 incident.

As a result of Fulton's conduct on April 2, the State charged him with rape, attempted strangulation, aggravated assault, and the use of a deadly weapon during the commission of a crime. Fulton pled not guilty, and the case proceeded to trial. Before trial, the State filed a notice of intent to admit prior bad acts in evidence under Idaho Rule of Evidence 404(b). Specifically, it disclosed its intent to introduce evidence of a "history of forcible sexual abuse towards the victim to show her reasonable belief that resistance would be futile or that resistance would result in force or violence beyond that necessary to commit the act of rape." In response, Fulton moved in limine to exclude this evidence, arguing it was merely inadmissible propensity evidence.

During a pretrial hearing, the district court ruled that the evidence would be admissible under Rule 404(b) stating:

> The motion in limine regarding 404(b) evidence, I think this is kind of a unique question, frankly. It would tend to show propensity. But in this particular case, force is an essential element of the crime charged, the crime of rape that's charged. So long as the evidence of the crime, misconduct, is limited to that which tends to prove his motive for applying the force this time and her lack of consent--or rather his knowledge of her lack of consent, then I think that it's admissible for that narrow purpose.

Pursuant to this ruling, L.F. testified during trial about two prior sexual encounters with Fulton:

Q. Was there a time in which you attempted to set boundaries with [Fulton] with respect to anal sex?
A. Yes.
Q. When did that first occur?
A. Before [my son] was born; my birthday in 2008 approximately.
Q. Okay. When that happened, can you describe what occurred?
A. [Fulton] forced anal sex and I said, no, and scurried away from him.
Q. Specifically where did that occur?
A. On a camping trip in a tent.
Q. When you tried to get away from him, did he say anything?
A. He said, "I like it when you squirm."
Q. Even though you told him no, what happened?
A. He still forced anal.
Q. Did you feel like you had any way to refuse that?

3

A. No.
Q. Was there another time in which he forced you to have anal sex?
A. Yes.
. . . .
Q. Can you describe what happened?
A. [Fulton] tied me to the bed.
Q. Did you want to be tied to the bed?
A. No.
Q. When he tied you to the bed, what did he do?
A. He left me there for a long time and then came back to force sex.
Q. When he tied you to the bed and left you there, were you dressed?
A. No.
. . . .
Q. [H]ow did that make you feel?
A. Disrespected and like I was worthless and just trash.
Q. Were you able to refuse him at that time?
A. No.
Q. Were you able to move from the bed?
A. No.
Q. When he forced sex, were you still tied up?
A. Yes.

During this testimony, Fulton objected. The district court overruled the objection but gave the following limiting instruction to the jury:

> I'm going to give you an instruction now, ladies and gentlemen, with respect to this line of questioning and I will give it to you again at the end of the testimony
>
> [This] evidence has been introduced for the purpose of showing that [Fulton] committed acts other than those for which he is on trial.
>
> That evidence, if believed, is not to be considered by you to prove [Fulton's] character or that [Fulton] has a disposition to commit crimes. Such evidence may be considered by you only for the limited purpose of proving [Fulton's] motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In addition to L.F.'s testimony, the State presented the testimony of the nurse who examined L.F.; a physician specializing in the treatment of sexual assault and domestic violence victims; a professor of criminal justice with a Ph.D. in criminology; an inmate who was incarcerated with Fulton in early April; three police officers who investigated the incident; and a paramedic who responded to L.F.'s 911 call.

Before the jury deliberated, the district court reiterated its earlier instruction not to consider the evidence of other acts Fulton had committed to prove his character or his disposition and to consider that evidence only for "the limited purpose of proving [Fulton's] motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

4

Additionally, the court instructed that to prove rape, the State had to show--among other elements--that L.F. "submitted under the objectively reasonable belief that resistance would result in force or violence beyond that necessary to commit the act of rape."

The jury found Fulton guilty of rape and attempted strangulation. It could not reach a verdict on the aggravated assault charge, however. The district court imposed a sentence of thirty years, with fifteen years determinate. Fulton timely appeals.

## II.

## ANALYSIS

### A.     Admission of I.R.E. 404(b) Evidence

Fulton contends the district court erred by allowing L.F. to testify about the two prior incidents in which Fulton forced anal sex on her. Fulton asserts this evidence is improper propensity evidence that should have been excluded under Rule 404(b). Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." I.R.E. 404(b)(1). This evidence may be admissible for another purpose, however, if the evidence proves "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" and if the prosecutor gives reasonable notice of his intent to offer the evidence at trial. I.R.E. 404(b)(2)(A), (B).

Rule 404(b) prohibits the introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Evidence of another crime, wrong or act, however, may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence under Rule 404(b), the trial court must first determine whether sufficient evidence of the other acts exists such that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of

5

unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009).

In this case, Fulton neither challenges the sufficiency of evidence that the two prior incidents of forced anal sex actually occurred nor argues the evidence's danger of unfair prejudice substantially outweighs its probative value. Rather, Fulton only challenges the evidence's relevancy. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *State v. Stewart*, 161 Idaho 235, 237, 384 P.3d 999, 1001 (Ct. App. 2016). Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

On appeal, Fulton argues that "the only logical inference" the jury could draw from the two prior incidents of forced anal sex was that Fulton "was a bad person and was likely to have committed this type of criminal offense specifically because of his bad nature." Fulton challenges the district court's ruling that the two prior incidents are relevant to Fulton's motive for using force or to his knowledge of L.F.'s lack of consent. Further, he argues the evidence is not relevant to any of the other Rule 404(b)(2) exceptions, including Fulton's opportunity, intent, preparation, plan, identity, or absence of mistake or accident. *See* I.R.E. 404(b)(2) (listing permitted uses). In response, the State argues the two prior incidents were admissible under Rule 404(b)(2), including "to show Fulton's intent and motive to use force to prevent [L.F.] from resisting the rape and increase his arousal even if she did" and "to show his knowledge that [L.F.] was not consenting." We agree with the State.

Contrary to Fulton's arguments that the two prior incidents are "at best" "superficially similar" to the conduct for which the State charged him, the common characteristics among the three incidents include lack of consent, restraint, and forced anal sex. The first incident, which occurred during a camping trip, is relevant to show knowledge, namely during the April 2 incident at issue, Fulton knew L.F. did not consent to having anal sex because she had affirmatively refused to consent previously.

6

Further, both prior incidents are relevant to show Fulton's intent and his motive. Motive is generally defined as that which leads or tempts the mind to indulge in a particular act. *State v. Salinas*, 164 Idaho 42, 44, 423 P.3d 463, 465 (2018). Intent is the purpose to use a particular means to effect a certain result. *Id.* The two prior incidents during which Fulton restrained L.F. and forced anal sex on her tend to show that Fulton had a motive to dominate L.F. and intended to restrain her during the April 2 incident in question so he could again force anal sex on her. Accordingly, the district court did not err by admitting L.F.'s testimony of the two prior incidents.

## B. Harmless Error

Moreover, even if admission of L.F.'s testimony about the two prior incidents were erroneous, any purported error was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Based on a review of the evidence, we conclude that any error in admitting L.F.'s testimony about the two prior incidents in which Fulton forced anal sex on her was harmless. The State's evidence in this case included, for example, the testimony of the registered nurse who examined L.F. on April 3. The nurse testified about the facts L.F. reported to the nurse regarding Fulton's conduct on April 2 and that report was generally consistent with L.F.'s

testimony. Further, the nurse testified that she did not see any marks on L.F.'s neck but that her genital area was "swollen" and "tender" with "very visible tears on the perineal area," which "were open" and "oozing" "serosanguinous fluid, which is, like, a bloody fluid." Also, both the nurse and a physician specializing in the treatment of domestic abuse and sexual assault victims testified that strangulation does not always result in "visible external signs." Further, both of them testified strangulation can cause a loss of bladder control, which L.F. testified occurred when Fulton held his hand against her throat while fighting with her about her cell phone.

The State also introduced evidence from a criminologist who testified that a majority of domestic violence victims do not resist sexual assault. Further, one of the police officers testified that Fulton corroborated certain facts L.F. had reported to the officer, including that Fulton admitted to arguing with L.F., to putting his hands on her throat during sexual intercourse, and then to arguing with her about her phone. Finally, an inmate who was incarcerated with Fulton testified that he admitted to the inmate that Fulton "held a knife to [L.F.'s] throat and had sex with her, forced her to have sex with him, anal sex." The probative force of this and other evidence demonstrate L.F.'s testimony about the prior two incidents of forced anal sex were minimal and did not likely contribute to the jury's verdict.

Moreover, the district court instructed the jury twice that L.F.'s testimony about the two prior incidents was not to be considered to prove Fulton's character or his disposition to commit the charged crime but, rather, was only to be considered for the limited purpose of providing his "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* I.R.E. 404(b)(2) (listing permissible uses). We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996).

## III.

## CONCLUSION

The district court did not err by admitting L.F.'s testimony regarding the two prior incidents when Fulton restrained her and forced anal sex on her. This evidence was admissible under Rule 404(b)(2) to prove Fulton's knowledge, motive, and intent. Moreover, any purported error in admitting the evidence was harmless. Therefore, we affirm Fulton's judgment of conviction for rape and attempted strangulation.

Chief Judge HUSKEY and Judge Pro Tem MELANSON **CONCUR**.