# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35687

STATE OF IDAHO, )
            )
           Plaintiff-Respondent, )
            )
v. )
            )
VANCE A. WATKINS, )
            )
           Defendant-Appellant. )

Boise, September 2009 Term

2009 Opinion No. 151

Filed: December 24, 2009

Stephen Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Phillip M. Becker, Senior District Judge.

The judgment of conviction is <u>vacated</u> and the case is <u>remanded</u> for a new trial.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Erik Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Ken Jorgensen argued.

_____

HORTON, Justice

This case comes before the Court upon review of an Idaho Court of Appeals decision vacating the conviction of Vance A. Watkins and remanding his case for a new trial. A jury found Watkins guilty of one count of lewd conduct with a minor in violation of I.C. § 18-1508. The court of appeals held that the trial court abused its discretion in admitting testimony from the State's DNA expert, who did not conduct DNA testing herself and whose testimony reflected information about the testing that she obtained from a colleague. The colleague did not testify. Although Watkins alleges both that the expert's testimony was based upon inadmissible hearsay and that it violated his Sixth Amendment right to confrontation, we decide this case solely upon the evidentiary issue. We vacate the conviction and remand the case for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2004, a grand jury indicted Watkins on a single count of lewd conduct with a minor for allegedly having oral, anal, and genital contact with a six-year-old girl. The girl

told a school counselor, law enforcement, and health and welfare officials that Watkins was having sexual intercourse with her. Law enforcement officers secured a search warrant for Watkins' apartment. The search revealed a used condom full of semen, seven pairs of girls' underwear stained with semen, and unused condoms, lubricating jelly, massage oil, and a local anesthetic in a nightstand next to a bed. Law enforcement officers obtained DNA samples from both Watkins and the child. They also took photos showing the location and state of the items found at Watkins' apartment, including the recently used condom and semen-stained underwear, which were sent to a private DNA laboratory for analysis.

At trial, the State's DNA expert, Dr. Carla Finis, testified[1] that, according to tests performed at her private laboratory, Identigenetix, Watkins' DNA was in the semen on the girl's underwear and inside the condom and the girl's DNA was on the outside of the condom. Dr. Finis, however, was not at Identigentix to receive the evidence in person and did not perform the DNA testing herself. Instead, Dr. Finis relied on communications with her colleague, Kermit Channell, as well as his notes, in forming her conclusions about the tested evidence. Watkins objected that Dr. Finis' testimony regarding what Channell did with the evidence upon receiving it at Identigentix was hearsay. Watkins later objected to Dr. Finis' testimony regarding how Channell tested the evidence on the basis that "she didn't have any personal independent knowledge of how this testing was performed." Finally, Watkins objected to Dr. Finis' ultimate conclusion regarding the tested evidence on "the grounds [previously] stated." The jury convicted Watkins, and the district court sentenced him to life in prison with fifteen years fixed.

Watkins appealed, asserting in his opening brief before the court of appeals that the district court's admission of Dr. Finis' testimony regarding the handling and testing of the evidence at Identigenetix violated his Sixth Amendment right to confrontation. In his reply brief, Watkins asserted as an additional issue that Dr. Finis' testimony was inadmissible hearsay. The court of appeals ordered the parties to submit supplemental briefing because Watkins failed to adequately address either the Sixth Amendment issue or the hearsay argument in his initial briefing. Watkins and the State submitted supplemental briefing in which they addressed the confrontation and hearsay issues. Despite the State's argument that the issue was waived because Watkins failed to argue it in his opening brief, the court of appeals held that Dr. Finis'

---

[1]     Pursuant to stipulation by the parties, Dr. Finis was deposed, and the videotape of her deposition was then admitted and published to the jury.

testimony was inadmissible hearsay. The court reasoned that because the State had addressed the hearsay issue in its supplemental briefing, the fact that Watkins failed to raise it in his opening brief did not cause the State any harm. The court vacated Watkins' judgment of conviction and remanded the case for a new trial. We granted the State's timely petition for review.

## II. STANDARD OF REVIEW

While this Court gives serious consideration to the views of the Idaho Court of Appeals when considering a case on review from that court, it reviews the district court's decision directly. *Mattoon v. Blades*, 145 Idaho 634, 636, 181 P.3d 1242, 1244 (2008). Unless an error affects a substantial right of a party, the error does not constitute grounds for reversal. *State v. Sandoval-Tena*, 138 Idaho 908, 911, 71 P.3d 1055, 1058 (2003) (citing I.C.R. 52); I.R.E. 103(a).

In *State v. Maylett*, 108 Idaho 671, 674, 701 P.2d 291, 294 (Ct. App. 1985), Judge Burnett filed a special concurrence in which he challenged statements by this Court that trial courts have "broad discretion" over evidentiary rulings. Judge Burnett stated that:

> The law of evidence is structured by rules, forged by centuries of experience and continually tested against evolving notions of fairness and truth-seeking. Our Supreme Court recently has adopted a detailed and painstakingly drafted formulation of such rules. *See* Idaho Rules of Evidence (effective July 1, 1985). These rules are not mere precatory guides to discretion; they are standards controlling the outcome of evidentiary questions. A trial judge possesses no "discretionary" authority to alter or to disregard specific standards-particularly in criminal trials, where these standards impart real meaning to an accused's right to a fair trial.
>
> Discretion is properly exercised only when a rule of evidence calls for it.

*Id.* (Burnett, J., specially concurring). We have recognized and cited Judge Burnett's analysis approvingly. *State v. Smith*, 117 Idaho 225, 234, 786 P.2d 1127, 1136 (1990) (citing *Maylett*, 108 Idaho at 674, 701 P.2d at 294 (Burnett, J., specially concurring) ("Discretion is properly exercised only when a rule of evidence calls for it.")). We have emphasized that the trial court's discretion is only broad when it acts as a fact finder: "With respect to the admission of evidence, the trial court has broad discretion and *its judgment in the fact finding role* will only be disturbed on appeal when there has been a clear abuse of discretion." *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992) (citing *State v. Crea*, 119 Idaho 352, 806 P.2d 445 (1991); *State v. Giles*, 115 Idaho 984, 772 P.2d 191 (1989)) (emphasis added). Further, we have refined our statement that a trial court has discretion over evidentiary rulings by noting that "[n]evertheless,

questions of relevancy are reviewed *de novo.*" *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996) (citing *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993)). In short, our previous decisions reflect our understanding that application of the rules of evidence require trial courts to answer both factual and legal questions.

That is why, when we use the word "discretion" with respect to our standard of review for evidentiary rulings, we mean judicial discretion, i.e.,

> the discretionary action of a judge or court . . . bounded by the rules and principles of law, and not arbitrary, capricious, or unrestrained. It is not the indulgence of a judicial whim, but the exercise of judicial judgment, based on facts and guided by law, or the equitable decision of what is just and proper under the circumstances. It is a legal discretion to be exercised in discerning the course prescribed by law and is not to give effect to the will of the judge, but to that of the law.

BLACK'S LAW DICTIONARY 419 (5th ed. 1979) (citation omitted). Our commonly used standard for determining whether a trial court abused its discretion with respect to an evidentiary ruling incorporates this meaning of judicial discretion. On review, we ask

> " . . . (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct. App. 1987)

*State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

### III. ANALYSIS

Watkins contends that Dr. Finis' testimony violated his right to confrontation and that it was inadmissible hearsay. The State contends that Watkins failed to properly raise the hearsay issue on appeal. We first examine whether we may address the hearsay issue. We next consider whether the district court abused its discretion in allowing Dr. Finis' testimony. Because we conclude that the district court erred in admitting Dr. Finis' testimony, we vacate the judgment and remand for a new trial without addressing whether Dr. Finis' testimony violated Watkins' Sixth Amendment right to confrontation.

**A. We may properly consider the hearsay issue in this appeal.**

The State contends that, because Watkins failed to designate as an issue or argue in his opening brief on appeal his claim that Dr. Finis' testimony contained inadmissible hearsay, he waived that issue. Watkins responds that the principle behind a court's declining to consider issues not raised in the opening brief—that a court should not consider issues to which the

respondent has not had an opportunity to respond—is moot in this case because the State was able to address the hearsay issue. We agree.

Idaho Appellate Rule 35 states in relevant part that:

**(a) Appellant's Brief.** The brief of the appellant shall contain the following divisions under appropriate headings:

. . . .

(4) *Issues Presented on Appeal.* A list of the issues presented on appeal, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of the issues should be short and concise, and should not be repetitious. The issues shall fairly state the issues presented for review. The statement of issues presented will be deemed to include every subsidiary issue fairly comprised therein.

. . . .

(6) *Argument.* The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.

The State relies on *State v. Raudebaugh*, in which this Court, pursuant to I.A.R. 35, declined to consider a state constitutional claim because the appellant did not address it until his reply brief. 124 Idaho 758, 763, 864 P.2d 596, 601 (1993). The Court in that case stated that "[r]aising the issue at this late stage of the briefing does not allow for full consideration of the issue, and we will not address it." *Id.* The Court in *Raudebaugh* did acknowledge, however, that the Court has sometimes relaxed the requirement that issues be designated in the opening brief and cited to *State v. Prestwich*, 116 Idaho 959, 961, 783 P.2d 298, 300 (1989), *overruled on other grounds*. *Id.*

The Court in *Prestwich* stated that I.A.R. 35 "might be relaxed where the issue[s are] . . . addressed by authorities cited or arguments contained in the briefs." *Id.* (citing *Bolen v. Baker*, 69 Idaho 93, 99, 203 P.2d 376, 379 (1949); *State v. Dennard*, 102 Idaho 824, 825 n. 2, 642 P.2d 61, 62 n. 2 (1982); *State v. Hoisington*, 104 Idaho 153, 159, 657 P.2d 17, 23 (1983)); *see also Everhart v. Washington County Rd. & Bridge Dep't*, 130 Idaho 273, 274-75, 939 P.2d 849, 850-51 (1997). In *Everhart*, the Court employed this relaxed standard. Everhart failed to designate any issues on appeal; however, because the respondents listed two issues on appeal, providing authority and argument for each, and because Everhart provided argument for those issues as well as authority for one of them, we did not rigidly apply I.A.R. 35 and considered the entirety of the appeal. 130 Idaho at 275, 939 P.2d at 851. We reasoned that "[b]oth parties discussed the factual background in sufficient detail [such] that we can decide the issues . . . ." *Id.* In *Suitts v.*

*Nix*, the Court further explained that the reason it will not consider issues not addressed in the opening brief is that "the issues presented . . . are the arguments and authority to which the respondent has an opportunity to respond . . . ." 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

This case comes before us in an unusual procedural posture. In response to the court of appeals' order for supplementary briefing, both parties have had a complete opportunity to develop the factual background and legal arguments relating to Watkins' evidentiary argument. Because the State has responded to Watkins' hearsay claim, the principle underlying I.A.R. 35 has not been violated. In light of our statements in *Raudebaugh*, *Prestwich*, and *Suitts*, we conclude that the evidentiary issue may be considered by this Court. While typically a failure to designate and argue issues in the opening brief will result in a waiver of those issues, given the manner in which the hearsay issue has come before this Court, we address it now.

**B. The district court abused its discretion in permitting Dr. Finis to testify about her communications with her colleague and as to the contents of her colleague's notes; this error entitles Watkins to a new trial.**

"The Idaho Rules of Evidence define hearsay as 'a statement [oral or written], other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Sandoval-Tena*, 138 Idaho at 911, 71 P.3d at 1058 (quoting I.R.E. 801(a) and (c)). We first consider whether the evidence to which Watkins objected was hearsay. We note that a determination that evidence contains hearsay is merely the starting point in our analysis. Although I.R.E. 802 provides that hearsay evidence is generally inadmissible, much hearsay evidence is admissible under the exceptions provided by I.R.E. 803 and 804. Thus, the critical inquiry is whether the hearsay evidence to which Watkins objected falls within one of the exceptions provided by these rules. Specifically, we ask whether the district court recognized that it did not have discretion to admit the hearsay evidence if the requirements for an exception were not met; whether it acted consistently with the rules governing hearsay exceptions; and whether it reached its decision to admit the hearsay by an exercise of reason.

Dr. Finis began her testimony by describing how the Nampa Police Department sent a box of evidence to her laboratory in Arkansas where her colleague, Kermit Channell, received the box and temporarily stored it in a vault. Dr. Finis stated that she knew that Channell was the person who received the evidence based upon a written chain of custody and "the fact that we're in constant communication as well." She explained that Channell opened the box and looked

first at the sexual assault kit containing a DNA sample from the six-year-old girl. Counsel for Watkins objected to this testimony and the following exchange took place:

> MR. TILLEY: Your Honor, I have an objection, Your Honor. If I could ask a question in aid of objection.
> THE COURT: You may.
>
> VOIR DIRE EXAMINATION BY MR. TILLEY
>
> Q. Ms. Finis, were you present when [Channell opened the box]?
> **A. No, I was not.**
> Q. Did you see him open the box?
> **A. No, I did not.**
> Q. Did you see him receive the box?
> **A. No, I did not.**
> Q. Did you see him lock the box in the vault?
> **A. No, I did not.**
> MR. TILLEY: Your Honor, I think this is hearsay, so I'm going to object to her characterizing what it was that Mr. Channell did with the evidence.
> THE WITNESS: It's documented in his notes.
>
> VOIR DIRE EXAMINATION BY MS. BOND
>
> Q. Are you referring to certain notes that Mr. Channell—
> **A. These are Mr. Channell's notes, yes.**
> Q. And you're relying on those as accurately reciting what happened with that evidence?
> **A. That, in addition to the photographic depiction as well.**
> THE COURT: Objection overruled.

Dr. Finis' testimony as to what Chanell did with the contents of the box was based upon hearsay. That is, Dr. Finis relayed the contents of out-of-court written statements by Channell, as well as unidentified oral statements from Channell, in order to prove the truth of the matters asserted therein, i.e., that Channell received the box, put it into a vault, and later opened it and removed the sexual assault kit containing the six-year-old girl's DNA sample.

After the court overruled Watkins' first objection, Dr. Finis testified that Channell used an oral swab taken from the six-year-old girl to establish a reference DNA sample for her; that Channell used both penile and oral swabs taken from Watkins to establish a reference DNA sample for him; and that Channell extracted DNA from both the inside and outside of the used condom and tested it to see whether it matched either Watkins' or the six-year-old girl's DNA. Dr. Finis testified that the DNA Channell tested on the inside of the condom matched Watkins' DNA and that the DNA Channell tested on the outside of the condom was a mixture of both Watkins' DNA and the six-year-old girl's DNA. At this point, counsel for Watkins objected:

MR. TILLEY: I also have another objection. I would like to ask a question in aid of objection, if I may, Your Honor.

THE COURT: All right.

VOIR DIRE EXAMINATION BY MR. TILLEY:

Q. This report you're referring to Ms. Finis, who was this created by?

**A. Me.**

Q. It was created by you in what fashion?

**A. Based on examination of the electronic data that was generated from the DNA analysis and my interpretation of that.**

Q. How was that electronic data—how did you receive that data?

**A. On a disk.**

Q. On a CD? A floppy disk?

**A. Yes, the raw data.**

Q. Was it mailed to you?

**A. Yes, it was.**

Q. You didn't do this testing yourself?

**A. I did not do the testing, no. Kermit Channell did the testing.**

Q. You were present when he did the testing?

**A. No, I didn't. The steps, again, are all documented in notes.**

Q. Okay. The notes that you've been referring to yourself?

**A. The notes that—what I'm referring to now is my report based on my interpretation. The notes for the physical processing of the evidence are in Kermit's handwriting and his initials, and he took those notes, and he carries that through through [sic] the extraction procedures as well.**

Q. How is it that you're certain that he followed those steps?

**A. There's nothing to indicate he didn't by the basis of the result. There's no foreign profiles. There's nothing unexpected. Sperm matches sperm. Nonsperm matches nonsperm.**

Q. You don't have any personal knowledge that he followed the steps?

**A. Other than his own integrity and my years of experience with him in his practice, yes.**

MR. TILLEY: I have an objection to the introduction of the evidence regarding this testing based on the fact that while Ms. Finis did receive information from the person who tested it, she didn't have any personal independent knowledge of how this testing was performed.

MS. BOND: Your Honor, she did talk about the common industry standards, and she, as an expert, can rely on reliable hearsay in forming an opinion.

THE WITNESS: We have standard operating procedures that are in writing.

THE COURT: Objection overruled. She may testify.

As counsel for the State acknowledged, Dr. Finis' testimony regarding Channell's notes about how he performed the DNA testing is hearsay. The contents of Channell's notes were relevant

only for the purpose of proving the truth of the matter asserted therein – that Channell created reference DNA samples for Watkins and the six-year-old girl, extracted DNA from both the inside and outside of the condom, and tested that DNA for a match with the reference samples.

Dr. Finis then testified that, according to Channell's notes, Channell removed seven pairs of girls' underwear from the evidence box and found semen on one pair from which he extracted DNA that he then tested for a match. Before Dr. Finis could testify that the DNA in the semen on the underwear matched Watkins' DNA, Watkins' counsel objected and moved "to strike the DNA evidence on the grounds I've stated." It is evident that the sole purpose of presenting evidence as to the contents of Channell's notes was to show that Channell tested a substance that he identified as semen in the manner described by Dr. Finis to determine whether there was a DNA match. As highlighted above, counsel for the State admitted that Dr. Finis' testimony relating to the substance of written and oral communications from Channell was hearsay; that is, it was offered to demonstrate that Channell's testing was conducted in a reliable and accurate manner. Even without the State's attorney's admission, it is evident that Dr. Finis was relaying Channell's statements for the truth of their contents. If Channell's statements were not truthful, Dr. Finis' interpretation of his test results would have been without evidentiary significance. Thus, we conclude that Dr. Finis' testimony regarding Channell's testing on the underwear was hearsay.

The State urges that even if Dr. Finis' testimony was hearsay, it was properly admitted under two exceptions to I.R.E. 801. The State urges that Dr. Finis' hearsay testimony is admissible under I.R.E. 803(6) and I.R.E. 703. Neither rule operates in this case as the State suggests.

Idaho Rule of Evidence 803 states in relevant part that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
> . . . .
> *6) Records of Regularly Conducted Activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this

paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The State urges that Channell's notes were records kept in the course of the regularly conducted business activity of Identigenetix and thus that Dr. Finis' testimony as to the contents of those notes is admissible under I.R.E. 803(6). We disagree.

We first observe that some of Finis' testimony was not based upon Channell's notes; rather it reflected oral communications from Channell. There is simply no basis upon which we find that such oral communications fall within the business record exception.

Next, Channell's notes were not offered into evidence. In the absence of any document, electronic record or some other "record" – regardless of its form – there was simply no "business record" that might fall within this hearsay exception. Put another way,

> [t]he Original Writing Rule, Rule 1002, is applicable to writings and records admitted pursuant to Rule 803(6). Provided an exhibit has been shown to comply with both rules it may be admitted into evidence and, in the court's discretion, be either read to or handed to the jury. *A witness, however, over proper objection should not be permitted to testify as to the contents of the document or provide a summary thereof; the document "speaks for itself."*

30B Michael H. Graham, *Federal Practice and Procedure* § 7047 (Interim ed. 2009) (analyzing F.R.E. 803(6), which is identical to I.R.E. 803(6)) (emphasis added). In short, the State simply failed to offer a record into evidence that would fall within the exception provided by I.R.E. 803(6).[2]

Our decision today should not be misinterpreted as pronouncing a new rule of law regarding the chain of custody of exhibits[3] or that imposes a heightened standard for introduction of exhibits under I.R.E. 803(6).[4]

---

[2]    We need not consider the effect of I.R.E. 803(8), the public records exception, on the State's attempt to admit Channell's communications under I.R.E. 803(6), for the same reason that we conclude that the State's argument fails under 803(6)—the State did not offer to put into evidence a "record" of any kind. *Accord* 30B Michael H. Graham, *Federal Practice and Procedure* § 7049 n.1 (Interim ed. 2009) (stating that despite a slight change in the language outlining the kinds of records falling under the exceptions in F.R.E. 803(6) and (8), which slight change is also contained in I.R.E. 803(6) and (8), the drafters do not seem to have intended a substantive difference).

[3]    The court of appeals succinctly explained the role of chain of custody in the determination of admissibility of exhibits under the Idaho Rules of Evidence in *State v. Gilpin,* 132 Idaho 643, 646-47, 977 P.2d 905, 908-09 (Ct. App. 1999):

> Idaho Rule of Evidence 901 controls the authentication of evidence and states:
> > (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
> Often, the party offering evidence establishes the chain of custody in order to create a presumption

The State next urges that Dr. Finis' testimony is admissible under I.R.E. 703. That rule states that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence *in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.*

(Emphasis added). This Court added the italicized language to the rule in 2002 at the suggestion of the rules advisory committee. The committee suggested that the Court adopt the change in order to clarify that I.R.E. 703 should not be used as a means to avoid the prohibition on hearsay:

> The federal rule was amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted. Some Idaho courts have allowed inadmissible evidence to come in through an expert who testifies on direct about what he or she relied on in forming the opinion and this has been a back door for getting this evidence in the record. The intent of the rule is just that the opinion does not have to be excluded because part of the basis was evidence that would not be admissible itself.

Evidence Rules Advisory Committee Minutes of Meeting of November 2, 2001 at 3. In its current form,

> [I.R.E. 703] allows the expert to state an opinion based on inadmissible evidence and to indicate the general nature of the sources on which the expert has relied, but not to disclose, directly or indirectly, the contents of the sources on direct

---

that it was not materially altered during the chain of custody. The burden then shifts to the defendant to overcome the presumption, and the defendant must make some showing that the evidence was tampered or meddled with. The trial court must then determine that the proffered evidence has not been changed in any material respect. Proof of the chain of custody is a means by which identity of an exhibit may be established and by which the standard of admissibility can be satisfied; it is not, of itself, a separate requisite for admissibility.
(citations omitted)

[4] The foundational prerequisites for admission of such records remain unchanged. Based upon the testimony of the custodian of the record or other qualified witness, or by means of a certification complying with I.R.E. 902(11), the party offering such an exhibit under I.R.E. 803(6) must show:

(1) the exhibit is a memorandum, report, record, or data compilation
(2) of acts, events, conditions, opinions, or diagnoses
(3) made at or near the time by a person with knowledge or from information transmitted by a person with knowledge
(4) that the exhibit was kept in the course of a regularly conducted business activity; and
(5) that it was the regular practice of the business activity to create the exhibit.

examination unless they are otherwise admissible, or the court makes the required balancing determination.

D. Craig Lewis, *Idaho Trial Handbook* § 16:9 (2d ed. 2005).

The amendment to I.R.E. 703 serves to prevent an expert witness from serving as a conduit for the introduction of otherwise inadmissible evidence. In the present case, the district court did not make a finding that Channell's statements and notes were admitted for the limited purpose of evaluating Dr. Finis' opinion. Further, it is evident that the testimony was not offered for this limited purpose. Rather, the State clearly relied upon the hearsay evidence for the purpose of demonstrating the chain of custody, Channell's testing methodology, and to identify the locations on the condom and panties on which Watkins' and the victim's DNA were found. Aside from Dr. Finis' testimony, no other evidence on these subjects was introduced. Accordingly, we conclude that Dr. Finis' testimony as to hearsay received from Channell was not admissible pursuant to I.R.E. 703.

Because Dr. Finis' testimony contained hearsay that does not fall within an exception to the general prohibition against admission of hearsay evidence, we conclude that the district court abused its judicial discretion when it admitted Dr. Finis' hearsay testimony. We reach this conclusion because the district court failed to act consistently with the applicable legal standards provided by the rules of evidence. Further, we conclude that the introduction of this evidence affected a substantial right of Watkins'. The inadmissible hearsay presented to the jury included Dr. Finis' testimony that Watkins' semen was found on the child's panties, and that DNA from both Watkins and the child was found on a used condom. Although the child told an interviewer from CARES that Watkins had sexual intercourse with her, other evidence introduced during the trial indicated that she had made similar, unfounded allegations against her uncle, and a medical examination of the child's vagina and anus did not result in "definitive abnormal findings." We are unable to conclude that the jury would have returned the same verdict without the inadmissible hearsay from Dr. Finis. Accordingly, the judgment must be vacated and this matter remanded for a new trial.

## IV. CONCLUSION

This Court may properly consider Watkins' claim of erroneous admission of hearsay evidence. We conclude that Dr. Finis' testimony contained inadmissible hearsay and that its

admission affected a substantial right.  We therefore vacate the conviction and remand the case for a new trial.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.