# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41621

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | Boise, June 2015 Term |
| | ) | |
| Plaintiff-Respondent, | ) | 2015 Opinion No. 115 |
| | ) | |
| v. | ) | |
| | ) | Filed: December 22, 2015 |
| FARON RAYMOND HAWKINS, | ) | |
| | ) | Stephen Kenyon, Clerk |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge.

The district court's amended judgment of conviction is <u>affirmed</u>.

Faron R. Hawkins, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.

_____

ON THE BRIEFS

HORTON, Justice.

Faron Hawkins appeals from his 2008 conviction for two counts of robbery. Hawkins argues that the district court's 2010 retroactive determination that he was competent to stand trial in 2008 violated his due process rights. He also argues that he was not competent to waive his right to counsel and represent himself pro se. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January of 2008, a jury convicted Hawkins of two counts of robbery. At trial, Hawkins admitted that he robbed banks but claimed that he did so under duress that stemmed from his previous involvement with various government agencies, including the Central Intelligence Agency (CIA) and Defense Intelligence Agency (DIA). Subsequently, the Court of Appeals determined that the district court erred when it did not "*sua sponte* order a psychiatric evaluation and conduct a hearing . . . ." *State v. Hawkins*, 148 Idaho 774, 783, 229 P.3d 379, 388 (Ct. App. 2009) (emphasis original) [hereafter *Hawkins I*]. The Court of Appeals vacated Hawkins' judgment of conviction and remanded the case so that Hawkins could undergo a competency

1

evaluation pursuant to Idaho Code sections 18-211 and 18-212. *Id.* Significantly, the Court of Appeals opinion stated:

> Because *it is not possible to retroactively make a determination as to Hawkins' competency* at the time he was tried, we must vacate the judgment of conviction and leave the state free to retry Hawkins if he is found to be competent to stand trial.

*Id.*

On remand, the district court conducted a competency hearing on November 12, 2010, where it heard testimony from licensed psychologist Dr. Chad Sombke and licensed psychiatrist Dr. Michael Estess. Both experts had evaluated Hawkins and determined that Hawkins was competent during the entire course of his legal proceedings. In its order of December 6, 2010, the district court found that Hawkins was competent to stand trial in January of 2008 (the 2010 competency determination). However, the district court determined that the above-quoted language from the Court of Appeals was the law of the case and required it to retry the case. The State successfully moved for leave to pursue a permissive interlocutory appeal to this Court.

On appeal, this Court reversed the district court's decision, holding that "[n]either the law of the case doctrine nor I.A.R. 38 prevents the district court from making a retroactive competency determination as to Hawkins in this case." *State v. Hawkins*, 155 Idaho 69, 75, 305 P.3d 513, 519 (2013) [hereafter *Hawkins II*]. Due to the narrow issue presented by the permissive appeal, we did not address Hawkins' claim that the 2010 competency determination violated Hawkins' due process rights. *Id.* at 74–75, 305 P.3d at 518–19.

On remand, the State filed a motion asking the district court to take judicial notice of its 2010 competency determination. The district court granted the State's request to take judicial notice of the evidence that led to its 2010 competency determination and determined that it was appropriate to conduct another competency hearing to give Hawkins the opportunity to cross-examine witnesses and present expert testimony. The district court presumed that its previous determination that Hawkins was competent was correct, but it stated this "presumption" would be "subject to cross-examination and hearing from [Hawkins'] expert." The district court set the hearing for August 29, 2013.

On June 6, 2013, Hawkins' retained counsel moved that Hawkins be declared a needy person for the purpose of hiring an expert witness. The district court granted the motion and instructed Hawkins' counsel to "direct any specific requests for services to this Court for prior

approval." On June 28, 2013, Hawkins' attorney moved for leave to withdraw because Hawkins no longer wished for the attorney to represent him. At hearing, Hawkins expressed his desire to proceed pro so. The district court stated Hawkins' desire to represent himself was a "conundrum," explaining that Hawkins' pro se representation in a hearing where his main argument was that he was incompetent "creates a real conflict in the court's way of looking at this thing." The district court again explained to Hawkins that he had the right to a public defender and conducted an extensive *Faretta*[1] inquiry. The district court granted Hawkins' request to proceed pro se and appointed the public defender to serve as standby counsel.

Afterwards, Hawkins filed many pro se motions. At a status conference on July 17, 2013, the district court acknowledged these motions but deferred ruling on them because the "sole issue" before it was whether Hawkins was competent to stand trial in 2008. Hawkins informed the district court that he had not subpoenaed Dr. Estess for cross-examination and that he had not met with Dr. Claude Robert Cloninger, the psychiatrist that Hawkins wished to hire as an expert witness. The district court warned Hawkins that his competency hearing was rapidly approaching and that Hawkins needed to subpoena witnesses so that they could testify at the hearing.

Another status conference was held two weeks later. Hawkins told the district court that he had contacted Dr. Cloninger by email and that Dr. Cloninger was "awaiting verification for payment." In response to questioning, Hawkins informed the district court that Dr. Cloninger's fee was $450 an hour and that he would have to be compensated for travel and lodging because he resided in St. Louis, Missouri. The district court found that using public funds to pay for Dr. Cloninger was "not reasonable" and vacated the competency hearing scheduled for August 29, 2013.

On August 13, 2013, the district court issued a written order where it found that the costs for obtaining Dr. Cloninger "could easily exceed $20,000." The district court stated that it had reviewed "the State Board of Medicine list of psychologists and psychiatrists" and determined that "there are many qualified experts in this field in the Boise, Nampa, Caldwell and Twin Falls area that could provide expert opinion to the Court regarding the defendant's competency to proceed now and retroactively." The district court ordered Hawkins to submit to an examination by a local expert, disclose his choice of expert by August 29, 2013, and submit to examination within thirty days of the date of disclosure. The order further provided that "[f]ailure of the

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

defendant to submit to examination within this time period will preclude the defendant from presenting expert witness testimony at the retroactive competency hearing." The order also noted, but did not decide, various other motions Hawkins had filed. The district court did, however, deny Hawkins' motion to strike Dr. Estess' testimony "because there is no basis in fact or law to grant such a motion." Hawkins' opening brief does not assert that the district court erred in making these decisions.

On October 7, 2013, the district court issued an order setting a hearing for October 17, 2013, to "select a psychologist/psychiatrist to evaluate the defendant." The order further provided that "[i]n the event the defendant does not submit in writing prior to the hearing his selection of a psychologist/psychiatrist the court then will make the selection."

Hawkins did not notify the district court of his selection before the October 17th hearing.[2] At the hearing Hawkins, once again, told the district court that he wanted Dr. Cloninger to evaluate him. The district court then stated that it would appoint Dr. Robert Engle to evaluate Hawkins and Hawkins responded that he would not participate in an evaluation by Dr. Engle. After a break to confer with standby counsel, Hawkins requested a seven-day continuance so that he could have time to decide whether his standby counsel would become attorney of record. The district court denied this request, explaining that "[t]his has been going on since April." The district court again took a recess to give Hawkins time to confer with standby counsel. Before recessing, the district court outlined three options for Hawkins, stating:

> [I]f [standby counsel] is going to be your counsel, I'll give him an opportunity to go out in the community, find a psychiatrist or psychologist and testify on your behalf. And that's not going to be revocable on your part. He is going to be your counsel.
>     Or Option 2 is that you submit to Dr. Engle's evaluation. The court would appoint Dr. Engle, and he would be given an opportunity to evaluate you, submit a report to the court, [and] proceed accordingly.
>     Or Option 3, if you decline to submit to an evaluation by Dr. Engle, the court then will sentence you here forthwith today.

Following the recess, Hawkins informed the district court that he had decided to be represented by standby counsel and suggested that his parents might be able to retain Dr. Cloninger. The district court stated that it was "not going to proceed down that path" without Hawkins showing that his parents had committed to pay Dr. Cloninger. The district court

---

[2] Hawkins did submit a motion captioned "Notice of Defenses [sic] Psychiatrist[:] Motion for Payment to Psychiatrist" on October 21, 2013. In this filing, Hawkins reiterated his selection of Dr. Cloninger as his psychiatric expert.

reiterated its decision that Hawkins would not be able to "fire" his attorney if he elected to be represented and that the district court would not condition the appointment of counsel on Hawkins' ability to hire Dr. Cloninger. Hawkins evidently became angry and stated: "Then you should just sentence me today."[3] After determining that standby counsel did not have difficulty communicating with Hawkins during their "brief discussions," and that Hawkins was not on any psychotropic medications, the district court proceeded to sentencing. The district court then found as follows:

> Well, the court will find from the totality of the record that Mr. Hawkins, particularly in light of the extensive motions that he has filed since this was submitted back to the court in April of this year . . . is competent, and he understands the nature of the proceeding, that he has made a decision, and I find him to have made a knowing and intelligent decision to continue to insist that a psychiatrist from St. Louis, Missouri, be appointed to testify on his behalf for his articulated basis for not appointing that psychiatrist, that there have been numerous delays caused as a result of again Mr. Hawkins['] . . . failure to follow through with the court's specific order. The court will find that there has been ample opportunity afforded to Mr. Hawkins to present evidence to the court regarding his mental status at his trial in 2007 [sic].
> The court will find that the testimony and evidence presented to the court by Dr. Estess that Mr. Hawkins was competent to stand trial, that he was at the time of his evaluation by both Dr. Sombke and Dr. Estess was capable of understanding the proceedings, assisting in his defense, and that that remains the case today.

The district court then re-imposed Hawkins' original sentence, consisting of concurrent unified life sentences, with thirty[4] years fixed. Hawkins timely appealed.

## II. STANDARD OF REVIEW

We freely review constitutional issues because they present questions of law. *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006). A district court's factual determination that a defendant is competent to stand trial will not be disturbed if it is supported by substantial, competent evidence. *State v. Lovelace*, 140 Idaho 53, 63, 90 P.3d 278, 288 (2003).

## III. ANALYSIS

Hawkins argues that: (1) retroactive competency hearings that occur more than a year after trial violate due process; (2) there was insufficient evidence to support the district court's

---

[3] At this point, Hawkins repeatedly interrupted the district court's discussion with counsel, its findings regarding Hawkins' competency, and its pronouncement of sentence. These interjections included Hawkins' apparent request that he be sentenced to life imprisonment ("And I'll take life. You can give that to me.") and his observation that the district judge was "a diseased man."

[4] In doing so, the district court ignored Hawkins' request to make it "an even 40."

determination that Hawkins was competent to stand trial in 2008; and (3) Hawkins was not competent to waive his right to counsel. Hawkins was originally represented in this appeal by appointed counsel. After Hawkins and the State's initial briefs were filed, this Court granted Hawkins' attorney's motion to withdraw and directed that Hawkins proceed pro se in this appeal. Hawkins has filed a "Closing Brief of Appellant," which is essentially a reply brief that attempts to raise numerous additional issues.

## A. We do not adopt a bright-line rule that retroactive competency hearings that occur more than a year after trial violate due process.

After a hearing on November 12, 2010, the district court retroactively determined that Hawkins was competent during his trial, which ended on January 11, 2008. *Hawkins II*, 155 Idaho 69, 70–71, 305 P.3d 513, 514–15 (2013). Thus, the district court's retroactive determination was made approximately thirty-four months after Hawkins' trial ended. However, the district court determined that the law of the case prevented it from making a retroactive competency determination. This Court reversed the latter decision. *Hawkins II*, 155 Idaho at 75, 305 P.3d at 519. On remand, after Hawkins failed to obtain psychiatric expert testimony, on July 31, 2013, the district court once again determined that Hawkins was competent at the time of his trial. Hawkins argues we should adopt a per se rule that retroactive competency hearings conducted more than a year after trial violate due process.

"The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Lovelace*, 140 Idaho at 62, 90 P.3d at 287 (citing *Pate v. Robinson*, 383 U.S. 375 (1966)); *see also* I.C. § 18-210. The test for competency to stand trial is "[w]hether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." *State v. Hanson*, 152 Idaho 314, 325, 271 P.3d 712, 723 (2012) (quoting *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004)).

This Court has previously observed that it had not addressed whether retroactive competency determinations were permissible, but noted that such determinations have been made in other jurisdictions. *Hawkins II*, 155 Idaho at 73, 305 P.3d at 517. There we stated:

> [R]etroactive competency determinations are allowed in many jurisdictions under certain circumstances. *See, e.g., Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir.2001) ("We have said that retrospective competency hearings may be held when the record contains sufficient information upon which to base a reasonable

6

psychiatric judgment."); *Montana v. Bostwick*, 296 Mont. 149, 988 P.2d 765, 772–73 (1999) (holding that the erroneous failure to hold a pretrial competency hearing can be "cured" by a meaningful retrospective hearing); *Traylor v. State*, 280 Ga. 400, 627 S.E.2d 594, 601 (2006) (remanding for retrospective competency hearing at which defendant was to "have the burden to show incompetency by a preponderance of the evidence"); *People v. Ary*, 51 Cal.4th 510, 120 Cal.Rptr.3d 431, 246 P.3d 322, 329 (2011) *cert. denied*, —— U.S. ——, 132 S.Ct. 136, 181 L.Ed.2d 56 (2011) (holding that once the feasibility of a retrospective hearing is determined, requiring a criminal defendant to prove at a retrospective mental competency hearing that he was incompetent when tried earlier does not violate the defendant's due process rights).

*Id.*

The general rule in other jurisdictions is that retrospective competency hearings are disfavored, but they "are permissible when a court can conduct a *meaningful hearing* to evaluate retrospectively the competency of the defendant." 22A C.J.S. Criminal Law § 791. "A 'meaningful' determination is possible where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original proceedings." *Id.* When determining whether a retroactive hearing is permissible, courts have considered various "non-exhaustive factors," including:

> [1] the passage of time since the trial, [2] statements made by the defendant at trial, [3] the availability of contemporaneous medical and psychiatric evidence, [4] the availability of transcript or video record of the relevant proceedings, and [5] the availability of witnesses, both expert and nonexpert, who could offer testimony regarding the defendant's mental status at the time of trial.

*Id.*

Focusing on the time factor, courts have held "[t]ime is a relevant, though not determinative, factor, and even the passage of considerable time should not present an insurmountable obstacle." 40 Am. Jur. Proof of Facts 2d 171. Other state supreme courts have ruled that retroactive competency hearings that occur more than a year after trial are permissible. *See Williams v. State*, 378 A.2d 117, 119 (Del. 1977) (allowing retroactive competency hearing conducted "two and one half years" after trial), *cert. denied sub nom. Williams v. Delaware*, 436 U.S. 908 (1978); *Johnson v. Commonwealth*, 103 S.W.3d 687, 693 (Ky. 2003) (affirming trial court's determination that "seven years between the trial and the retrospective hearing was not enough in and of itself to deny Appellant due process."). The appropriate inquiry is whether a

meaningful determination occurred: a bright-line rule that only considers the timing of the hearing would not further this broader inquiry.

Hawkins argues that the Supreme Court has never held a retroactive competency proceeding that occurred more than a year after trial was valid. This is most likely because the Supreme Court has never held that the time when a competency hearing is conducted is dispositive of the validity of the hearing. *See Drope v. Missouri*, 420 U.S. 162, 183 (1975) (remanding for new trial largely because there was doubt about competency and because the judge was not able to observe the defendant at trial because the defendant was hospitalized for a suicide attempt); *Pate*, 383 U.S. at 385–87 (considering timing to merely be an aggravating factor in case where defendant had prolonged history of mental instability); *Dusky v. United States*, 362 U.S. 402, 402–03 (1960). Additionally, Hawkins points to no case that interprets *Drope*, *Pate*, and *Dusky* as imposing a bright-line rule that bars retroactive competency hearings that occur more than year after trial.

Although not controlling precedent, we note that the Ninth Circuit Court of Appeals evidently does not view timing alone to be dispositive. In a decision issued in July of 2011, the circuit court directed the district court to make a retroactive determination of the defendant's competency to waive his right to appeal in 2008 and, if the defendant was found not to be competent to waive his right to appeal, to further determine whether the defendant was competent to waive his right to counsel in July of 2008 for the penalty phase of a capital trial. *United States v. Duncan*, 643 F.3d 1242, 1250 (9th Cir. 2011).

We are not persuaded to adopt Hawkins' proposed bright-line rule. Instead, we adopt the broader multi-factor approach when evaluating the validity of a retroactive competency determination.

**B. The district court did not err when it determined that Hawkins was competent to stand trial in 2008.**

Hawkins asserts error in the retroactive competency determination due to the passage of time between the trial and the determination, the absence of evidence contemporaneous to the trial, and "the fluid nature of mental illness."

In this case, the district court was presented with evidence relating to the factors used to gauge whether a meaningful retroactive competency proceeding could take place. The testimony of Drs. Estess and Sombke is particularly informative because they were the only two experts

8

who presented evidence at Hawkins' competency hearing. Both doctors opined that Hawkins was competent.

Dr. Estess testified to interaction with Hawkins at the time of trial. Dr. Estess testified that he first saw Hawkins during the two-year timeframe of " '06 to April of '08" and discussed Hawkins' mental state with his clinical staff and jail staff. In Dr. Estess' view, Hawkins was not consistent in manifesting delusions and "selectively presented information" regarding delusions about government conspiracies to his parents and common-law wife, which made it doubtful that he suffered from delusions. He characterized Hawkins as "manipulative," "play[ing] mind games with people," and "deceitful." Dr. Estess' conclusion was that Hawkins was entirely competent to stand trial. Dr. Estess also testified that he read pretrial hearing transcripts and the trial transcript, which reaffirmed his opinion that Hawkins was competent.

Dr. Sombke also testified at the November 12, 2010, competency hearing and concluded that Hawkins was competent and that the stories Hawkins told were just an attempt "to benefit his current situation." Originally, Dr. Sombke had evaluated Hawkins on August 4, 2010, and reported that Hawkins did not have the capacity to assist in his own defense because he suffered from delusional beliefs. However, Dr. Sombke changed his mind after reviewing collateral information which showed that Hawkins did not consistently report involvement with government agencies. This collateral information included Department of Correction reports, the prison psychiatrist's notes, notes from treatment staff, a psychiatric evaluation of Hawkins' common-law wife, an evaluation conducted by Dr. Michael Johnston,[5] and information received from Dr. Estess. Dr. Sombke explained the changed opinion as follows:

> In reviewing the collateral information from the prison and the other evaluations I saw, I saw almost no references to the C.I.A., the D.I.A., or government agencies. It wasn't present in what Mr. Hawkins was telling other people. So it was just -- it was just not consistent with the true delusional disorder that would have been in those other conversations.

Drs. Sombke and Estess both explained that it was reasonable to originally consider Hawkins incompetent based upon his statements but to alter that opinion based on collateral information.

---

[5] Dr. Johnston's March 20, 2008, report was admitted into evidence, but Dr. Johnston did not testify at the competency hearing. Dr. Johnston was unable to conclusively diagnose Hawkins because Hawkins refused to participate in tests, but Dr. Johnston thought that Hawkins "does appear to be psychologically impaired" with a "dissociative identity disorder," otherwise known as multiple personality disorder. At the competency hearing, Dr. Sombke testified this was yet another instance of Hawkins being inconsistent and "playing around with mental health professionals" because Hawkins never represented to Dr. Sombke that he had other personalities. Further, Dr. Sombke testified that he did not see any "CIA information in Dr. Johnston's report."

They explained that this is because a professional conducting a competency evaluation must take the subject's representations at face value and that it is difficult to diagnose a person who is not being honest. Hawkins was represented by counsel at the November 12, 2010, competency hearing and counsel was able to cross-examine Drs. Sombke and Estess as to these opinions.

Hawkins' primary challenge to the district court's retroactive competency determination is based on the timing of the determination. As we have explained, the passage of time alone does not invalidate a retroactive competency determination. There was important evidence presented that mitigated the impact of the passage of time. The contemporaneous medical observations of Dr. Estess and his staff were important to the determination that Hawkins was competent in 2008. Likewise, Drs. Estess and Sombke were able to review the trial transcript when formulating their opinions. We also find it significant that the same judge making the retroactive competency determination presided over the trial and had the opportunity to factor in his first-hand observations of Hawkins' condition at the time of trial and compare those observations with the testimony of the experts.

The district court attempted to give Hawkins a second chance to present evidence relating to his competency, but Hawkins failed take advantage of this opportunity due to his insistence on having Dr. Cloninger serve as his expert witness. The district court's extension of the opportunity for Hawkins to present additional evidence regarding his competency shows that the district court made every reasonable effort to develop a complete factual record upon which to make a meaningful competency determination. The district court relied on its earlier 2010 competency determination only after Hawkins left it with no alternative.

The district court's competency finding was based upon substantial and competent evidence. The expert witnesses agreed that Hawkins was competent at the time of trial in 2008. The district court, as finder of fact, was entitled to rely on these opinions. For these reasons, we are unable to find error in the district court's decision that Hawkins was competent at the time of trial.

## C. The district court did not err by permitting Hawkins to represent himself.

Relying on *Indiana v. Edwards*, 554 U.S. 164 (2008), Hawkins claims that the district court erred by permitting him to represent himself.[6] Prior to trial, the district court conducted a

---

[6] Although Hawkins' argument is directed to the district court's decision to permit self-representation at trial, the State's responsive briefing appears to assume that the argument is directed at the district court's determination that

*Faretta* hearing and determined that Hawkins should be permitted to represent himself. *Hawkins I*, 148 Idaho 774, 776, 229 P.3d 379, 381 (Ct. App. 2009). Likewise, in 2013, due to its concerns regarding the "conundrum" of evaluating Hawkins' competency to waive the right to counsel in connection with proceedings wherein his primary contention was a lack of competence at trial, the district court conducted another extensive *Faretta* examination before permitting Hawkins to represent himself.

Hawkins asserts that the district court's error (or errors) consisted of its failure to apply the holding in *Edwards*, when permitting Hawkins to exercise the right of self-representation.[7] The parties' briefs on this issue posit the applicable standard of review as a determination whether the district court abused its discretion. This Court has not yet articulated a standard of review for *Edwards* challenges, but other courts have held such challenges are reviewable for an abuse of discretion, while being mindful that constitutional issues may also be implicated. *United States v. Johnson*, 610 F.3d 1138, 1145 (9th Cir. 2010); *United States v. Berry*, 565 F.3d 385, 389–90 (7th Cir. 2009). We need not decide the applicable standard of review because Hawkins advances this claim for the first time on appeal. This is significant because alleged claims of error that have not been preserved by objection are reviewed for fundamental error.

> [I]n cases of unobjected to fundamental error: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010). Thus, we must determine whether the district court's decision to permit Hawkins to exercise his right of self-representation was, in itself, unconstitutional.

Hawkins contends that the Supreme Court's holding in *Edwards* is that a higher standard of competence is required to permit a defendant to self-represent than to stand trial. In support of this argument, Hawkins notes the two-pronged test for competency to stand trial, which considers "[w]hether a defendant has sufficient present ability to consult with his lawyer with a

---

Hawkins should be permitted to represent himself in the 2013 competency proceedings. As will be explained, our holding addresses both phases of the proceedings below.

[7] The district court could not have applied the *Edwards* holding when deciding to permit Hawkins to represent himself at trial. *Edwards* was decided after the completion of the trial.

reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." *State v. Hanson*, 152 Idaho 314, 325, 271 P.3d 712, 723 (2012) (quoting *Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004)). By contrast, relying on *Edwards*, 554 U.S. at 175–76, Hawkins asserts that *Edwards* requires that the trial court determine whether the defendant is able "to carry out the basic tasks needed to present his own defense without the help of counsel."

We are not persuaded by this argument. In *Edwards*, the Supreme Court identified the legal question it was deciding as follows:

> We assume that a criminal defendant has sufficient mental competence to stand trial (*i.e.*, the defendant meets *Dusky*'s standard) and that the defendant insists on representing himself during that trial. We ask whether the Constitution permits a State to limit that defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented.

*Edwards*, 554 U.S. at 174. The Supreme Court answered this question by holding that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards*, 554 U.S. at 178.

This appeal presents a much different question. The United States Constitution and the Idaho Constitution each guarantee the right to self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Folk*, 151 Idaho 327, 339, 256 P.3d 735, 747 (2011). Rather than asking whether the State is permitted, in the limited circumstance wherein the defendant is not competent to perform the basic tasks needed to present his own case, to deny a defendant the right to proceed pro se, this appeal asks whether the State is *required* to abridge the constitutional right to self-representation. We agree with the conclusion reached by the Arizona Supreme Court when it answered the question before us: "*Edwards* allows, but does not require, states to insist upon representation by counsel for certain "gray-area" defendants. It does not give such a defendant a constitutional right to have his request for self-representation denied." *State v. Gunches*, 234 P.3d 590, 593 (Ariz. 2010). The Ninth Circuit Court of Appeals is in accord with this view:

> In *United States v. DeShazer,* 554 F.3d 1281, 1290 (10th Cir.2009), the Tenth Circuit held—as we hold today—that *Edwards* does not *compel* a trial court to deny a defendant the exercise of his or her right to self-representation; it simply

*permits* a trial court to require representation for a defendant who lacks mental competency to conduct trial proceedings.

*United States v. Ferguson*, 560 F.3d 1060, 1070 n.6 (9th Cir. 2009) (emphasis in original). As there is no clear violation of Hawkins' constitutional rights, we will not further address this claimed error.

**D. We will not address Hawkins' claims raised for the first time in his "Closing Brief of Appellant."**

After Hawkins decided to proceed pro se, he filed a multitude of pro se motions. The district court acknowledged these motions but deferred ruling on them because the only issue before it was whether Hawkins was competent to stand trial in 2008. Apart from that central question, the district court only ruled on Hawkins' motion to strike Dr. Estess' testimony. As he did before the district court, in the course of this appeal Hawkins changed course and elected to represent himself after the State filed its Respondent's brief. His pro se "Closing Brief of Appellant" raises many issues not addressed in his opening brief. These claims largely repeat issues that the district court declined to address, including: allegations of prosecutorial and judicial misconduct, coercion, and fraud; challenges to this Court's holding in the permissive appeal; a *Faretta* challenge; an argument that no valid indictment exists in this case; challenges to the expert's psychiatric opinions based on Hawkins' self-diagnosis; and that he was denied discovery and proper access to legal documents.

"A criminal defendant proceeding pro se still must follow the court's substantive and procedural rules." *State v. Dalrymple*, 144 Idaho 628, 636, 167 P.3d 765, 773 (2007) (citing *Faretta*, 422 U.S. at 832). Ordinarily, an appellate court does not consider arguments raised for the first time in a reply brief because a respondent does not have a full opportunity to respond to those issues. *State v. Watkins*, 148 Idaho 418, 422, 224 P.3d 485, 489 (2009). Here, Hawkins has raised issues that are unrelated to the competency issues that were originally raised on appeal and which were the subject of the district court's decision. Further, the State has not had an opportunity to respond to the issues raised in Hawkins' reply brief. Therefore, we will not address these arguments.

### IV. CONCLUSION

For the foregoing reasons, we affirm the district court's amended judgment of conviction.

Chief Justice J. Jones and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.

13